UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Robert L. Schmelzle, as Trustee
for the next of kin of Kelly Sue
Schmelzle,

    Plaintiff,

                                      MEMORANDUM OPINION
                                          AND ORDER
v.                                              Civil No. 06-4846

ALZA Corporation, Janssen
Pharmaceutica Products, LP, a/k/a
Janssen Orth-McNeil and Janssen
Pharmaceutica, Inc.

    Defendants.
_____

       Gale D. Pearson and Stephen J. Randall, Pearson, Randall & Schumacher, P.A. and J. Scott Bertram and Benjamin A. Bertram, Bertram & Graf, LLC and Gregory C. Graf, LLC for and on behalf of Plaintiff.

       Tracy J. Van Steenburgh, Dana M. Lenahan and Jan R. McLean Bernier, Halleland Lewis Nilan & Johnson, P.A. and Rita A. Maimbourg and S. Peter Voudouris, Tucker Ellis & West LLP for and on behalf of Defendants.
_____

       Plaintiff filed this wrongful death action in the District of Minnesota on December 11, 2006. Plaintiff has alleged that decedent died in Gillette, Wyoming on December 12, 2003, as a result of her use of Duragesic®, a fentanyl-containing,

transdermal patch available only by prescription for the treatment of chronic pain. Plaintiff further alleges that the death of the decedent was caused by the wrongful acts or omissions of the manufacturer and its subsidiaries of the prescription drug Duragesic®.

It is Defendants' position that this case has no connection to Minnesota. Plaintiff and the decedent resided in Wyoming during the relevant time period, and the decedent received all of her medical treatment in Wyoming. There are only three paragraphs in the Complaint that relate to Minnesota: ALZA is a Delaware corporation that has a facility in Minnesota where it designs and manufactures transdermal drug delivery patch systems (¶ 3), and that Janssen, a limited partnership organized and existing under the laws of the State of New Jersey, marketed and distributed Duragesic® in Minnesota (¶¶ 4 and 5).

At issue in this motion is which limitations period applies to Plaintiff's causes of action. Wyoming's wrongful death statute has a two year limitations period that begins to run upon the death of the decedent. Wyo. Stat. § 1-38-102(d). Minnesota's wrongful death statute has a three year limitations period. Minn. Stat. § 573.02(1). Defendants argue that this issue must be determined by applying Minnesota's choice of law principles.

A.  Choice of Law Standard

In diversity cases, the forum state's choice of law rules apply. <u>Ferrell v. West Bend Mut. Ins. Co.</u>, 393 F.3d 786, 796 (8th Cir. 2005). To decide whether a choice of law analysis is necessary, the Court first determines whether the rule of law at issue is procedural or substantive. <u>Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc.</u>, 111 F.3d 1386 at 1393 (8th Cir. 1997). The parties agree that the rule of law at issue is substantive, therefore the Court should proceed to Minnesota's choice of law analysis.

The first issue to be addressed is whether there is an actual conflict between the legal rules of the two states. <u>Nodak Mut. Ins. Co. v. American Family Ins. Co.</u>, 590 N.W.2d 670, 672 (Minn. Ct. App. 1999). "An actual conflict exists if choosing the rule of one state or the other is 'outcome determinative.'" <u>Id.</u> Clearly, there is a conflict between the applicable Wyoming and Minnesota statute of limitations. If Wyoming law applies, this action is time-barred, if Minnesota law applies, it is not time-barred.

Because there is an actual conflict, this Court must apply a five factor test to determine which law should govern. <u>Milkovich v. Saari</u>, 295 Minn. 155, 203 N.W.2d 408 (1973). The factors are: 1) predictability of results; 2) maintenance of

interstate order; 3) simplification of the judicial task; 4) advancement of the forum state's interests; and 5) application of the better rule of law. Id., 295 Minn. at 161, 203 N.W.2d at 412. The factors are not to be mechanically applied, but are meant "to prompt the courts to carefully and critically consider each new fact situation and explain in a straightforward manner their choice of law." Jepson v. General Casualty Company of Wisconsin, 513 N.W.2d 467, 470 (Minn. 1994).

    1. Predictability of Results

"Predictability of results as it relates to the tort aspect of a case is not of great importance in situations such as the one presented here because of the unplanned nature of automobile accidents." Jepson, 513 N.W.2d at 470. Although this case does not involve a car accident, arguably a wrongful death action due to a prescription drug is similarly unplanned. Thus, this factor is not of importance.

    2. Maintenance of Interstate Order

This factor concerns the assurance of "the free and unpenalized interstate movement of people and goods necessary to the success of the federal system." Nodak, 590 N.W.2d at 673. "This requires deference to a sister state's legal rules when that sister state has a substantial concern with the problem, even when the

forum state also has an identifiable interest." Id.

Defendants assert that of particular importance to this factor is the prevention of forum shopping. Jepson, 513 N.W.2d at 471. Plaintiff is a resident of Wyoming and the decedent resided there at all times relevant to the claims asserted. A Wyoming pharmacy dispensed the Duragesic® patch to the decedent and all heirs and next of kin reside in Wyoming. Plaintiff has not alleged in the Complaint that Duragesic® was designed or manufactured in Minnesota. Under these circumstances, Wyoming has a more substantial connection to this case. Defendants argue that by not filing this action in Wyoming, Plaintiff was trying to avoid the applicable Wyoming limitations period. Thus, application of Wyoming law would prevent forum shopping.

Plaintiff responds that the Defendants have minimal contacts with the state of Wyoming. By contrast, Defendants have had annual sales of Duragesic® of $50,000,000 in Minnesota between 2002 and 2006. No comparable sales figures were provided for Wyoming. Plaintiff further notes that ALZA does research and develops transdermal patches in Fridley, Minnesota. Plaintiff argues that as scientific knowledge concerning transdermal fentanyl systems does not exist in a vacuum, the knowledge of safety risks associated with fentanyl is common to

5

researchers at the Fridley facility as well as to those responsible for the design, marketing and sale of the patch at issue, Duragesic®. Given Defendants' connection to Minnesota, Plaintiff argues that forum shopping is not implicated in this case. Finally, Plaintiff notes that as of August 15, 2007, there have been 721 reports of adverse events associated with Duragesic® in Minnesota, compared to 56 in Wyoming.

This Court has previously held that maintenance of interstate order weighs in favor of the state that has the most significant contacts with the facts relevant to the litigation. In re Baycol Prods. Litig., 218 F.R.D. 197, 207 (D. Minn. 2003) (this factor weighs in favor of applying the law of the state in which the plaintiff resides, and where the drug was prescribed.). As applied to this case, Plaintiff is a lifelong resident of Wyoming, and facts surrounding the circumstances of the decedent using Duragesic® took place in Wyoming. Furthermore, there is no allegation that Duragesic® was designed or manufactured in Minnesota. Accordingly, the Court finds that this factor weighs in favor of the application of Wyoming law.

    3. Simplification of the Judicial Task

This factor is insignificant, as courts can just as easily apply the law of

another state as easily as their own. Jepson, 513 N.W.2d at 472.

    4. Advancement of Forum State's Interests

This factor is designed to ensure that Minnesota courts will not have to apply a state law that is "inconsistent with Minnesota's concept of fairness and equity." Schumacher v. Schumacher, 676 N.W.2d 685, 691 (Minn. Ct. App. 2004)(quoting Medtronic, Inc. v. Advanced Bionics Corp., 630 N.W.2d 438, 455 (Minn. Ct. App. 2001)). This factor also favors the law that will most effectively advance a significant interest of the forum state. Jepson, 513 N.W.2d at 472.

Minnesota favors compensating tort victims. Id. "By compensating tort victims, we reduce the chance that injured persons will be forced to seek public assistance as a result of their injuries." Danielson v. Nat.'l Supply Co., 670 N.W.2d 1, 9 (Minn. Ct. App. 2003). Compensating tort victims also ensures that medical providers will be paid, and it also promotes responsibility of sellers and producers. Id. The Court must also consider the public policies of both state's laws.

The Court agrees that Minnesota has little interest in this matter given its lack of connection with the core facts underlying Plaintiff's causes of action. Minnesota's interest in compensating tort victims is lessened where the injury

occurred in another state, the injured party is not a Minnesota resident and did not receive medical care here.  See generally RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145, comment c; accord Nesladek v. Ford Motor Co., 876 F. Supp. 1061, 1069 (D. Minn. 1994) aff'd 46 F.3d 734, 736 (8th Cir. 1995).  See also In re: Baycol Prod. Litig., 218 F.R.D. at 207 (fourth factor weighs in favor of application of the state law in which the plaintiff lived and in which the injury occurred.)  By contrast, Wyoming has a strong interest in the application of its own wrongful death statute and its limitation period in order to prevent the prosecution of stale claims.  See Corkill v. Knowles, 955 P.2d 438, 442 (Wyo. 1998).

    5.  Application of the Better Rule of Law

The better rule of law is intended to be the rule that made "good socio-economic sense for the time when the court speaks." Jepson, at 473.  This factor is generally addressed only if the application of the four previous factors are not determinative.  Shumacher, 676 N.W.2d at 692.

As applied to the facts of this case, the relevant factors of the choice of law analysis favor the application of Wyoming law in this case.

B.  Fraudulent Concealment

Plaintiff argues that even if the Court finds that Wyoming law should apply, the doctrine of fraudulent concealment requires that the two year limitation period not begin to run until Plaintiff uncovered the existence of said fraudulent conduct.  In support, Plaintiff cites to two decisions of the Wyoming Supreme Court, neither of which specifically adopt the doctrine that fraudulent concealment may toll the limitations period contained in Wyoming's wrongful death statute.  See, Corkill 955 P.2d 438 (holding only that discovery rule will not toll limitation period in wrongful death statute); Robinson v. Pacificorp, 10 P.3d 1133, 1136 (Wyo. 2000) (declining to address issue of whether wrongful death limitation period may be tolled by claim of fraudulent concealment).  Plaintiff nonetheless argues that Wyoming would toll the limitation period contained in the Wyoming wrongful death statute, and that Plaintiff has further plead a claim of fraudulent concealment with sufficient  particularity.

Defendants respond that Wyoming law does not support application of the doctrine of fraudulent concealment to toll the wrongful death limitations period.  In fact, the main case cited by Plaintiff, the Corkhill decision, implies that fraudulent concealment would not toll the limitations period.  In Corkhill, the

9

court held that as the limitations period in the wrongful death statute was a condition precedent, rather than a statute of limitations, "the time period authorized by a condition precedent, absent a savings clause, cannot be extended by the exceptions usually allowed for general statutes of limitation." Id. 955 P.2d at 443. The court thus refused to apply the discovery rule, or the minor tolling provisions, to the applicable wrongful death statute. The court did, however, reference a West Virginia decision which recognized that public policy would toll the limitation period if the defendant concealed material facts surrounding. Id (citing Miller v. Romero, 186 W. Va. 523, 413 S.E.2d 178 (W. Va.,1991)). Nonetheless, the court did not go so far as to hold that fraudulent concealment will toll the limitations period in the wrongful death statute.[1]

This Court thus finds that it is not clear whether Wyoming would apply the doctrine of fraudulent concealment to toll the limitations period of the applicable wrongful death statute. Assuming arguendo that the doctrine applies, the Court finds that Plaintiff has failed to plead it with sufficient particularity.

---

[1] Wyoming has, on the other hand, applied the doctrine of fraudulent concealment to the limitations periods applicable to other types of cases, such as under the Wyoming Government Claims Act, see Archuleta v. City of Rawlins, 942 P.2d 404 (Wyo. 1997), products liability involving injury only, see Olson v. A.H. Robins Co., 696 P.2d 1294 (Wyo. 1985) and assault and battery. See Turner v. Turner, 582 P.2d 600 (Wyo. 1978).

See Robinson, 10 P.3d at 1136.

Plaintiff argues that he has plead fraudulent concealment, but refers the Court only to the allegations supporting his substantive theories of recovery. In Olson, however, the court refused to toll the applicable statute of limitations on the plaintiff's product liability claims based on equitable estoppel/fraudulent concealment because the plaintiff failed to show that the defendant made representations or omissions which either induced the postponement of a suit or fraudulently concealed the facts necessary to a cause of action. Id. 696 P.2d at 1299.

> During the ensuing approximate ten-year period [from the time of injury and the filing of suit] there was no contact between appellant and appellee A.H. Robins Company. Therefore, there were no negotiations, no offers to settle, no statements of fact or opinion, no representations upon which appellant relied, and no course of dealings between the parties that could give rise to an estoppel. There is no showing that appellant inquired of appellee concerning the Dalkon Shield, or attempted to develop factual information, or that information was concealed from appellant. It is not enough that others may have undertaken this course of action. That does not help appellant; for, had she inquired of either the doctors or appellee, additional information might have resulted. There being no showing that information was concealed from appellant or that facts were misrepresented to her and relied upon to her detriment, she cannot prevail upon equitable estoppel.

Id.

Similarly, in this case the Plaintiff alleged that Defendants willfully concealed safety/risk information, but Plaintiff has not alleged that he specifically sought information from Defendants, and that Defendant made representations to him upon which he relied to his detriment by filing suit after the applicable limitations period had run.  Accordingly, the Court finds that Plaintiff has not sufficiently plead fraudulent concealment which tolls the applicable limitations period.

IT IS HEREBY ORDERED that Defendants' Motion for Judgment on the Pleadings [Doc. No. 63] is GRANTED.  This matter is dismissed.

Date: June 21, 2008

s / Michael J. Davis
Michael J. Davis
United States District Court